IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTHONY M. OGBONNAYA
622 Rittenhouse Street, N.W.
Washington, D.C.  20011                              *

                                                     *

                     Plaintiff,                      *        Civil Action No.:

                                                     *

vs.

                                                     *

RIVERSIDE TREATMENT SERVICES,
INC. incorrectly named as                            *
RIVERSIDE HOSPITAL
4460 MacArthur Boulevard                             *
Washington, D.C.  20007

                                                     *

and                                                  *

                                                     *

GEORGE T. HUDGENS, Individually and  as
CEO of Riverside Hospital                            *
4460 MacArthur Boulevard
Washington, D.C.  20007                              *

                     Defendants.                     *

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

## **NOTICE OF REMOVAL**

Defendants, Riverside Treatment Services, Inc. incorrectly named as Riverside Hospital

("Riverside") and George T. Hudgens ("Hudgens"), file their notice of removal from the

Superior Court for the District of Columbia in which this action is now pending, to the United

States District Court for the District of Columbia, and state as their grounds:

1.        This action, brought by Plaintiff, Anthony M. Ogbonnaya, in the Superior Court

for the District of Columbia and styled as *Anthony M. Ogbonnaya v. Riverside Hospital and*

*George T. Hudgens,* Case No. 2006 CA 008760 B, was filed on or about December 7, 2006.

2.        Defendant Hudgens was served with the First Amended Complaint on January 30,

2007.  Defendant Riverside has not been served.  Plaintiff asserts, *inter alia,* claims under Title

497688.1
2/26/2007

VII of the Civil Rights Act of 1964 and under the Consolidated Omnibus Budget Reconciliation Act ("COBRA") of 1986.  (See Amended Complaint, ¶1 and Counts I and VI.)

3.      The action is removable to the United States District Court for the District of Columbia pursuant to 28 U.S.C. §1441(a), since it is a civil action brought in a state court over which the district courts of the United States have original jurisdiction.  Because the action asserts claims under Title VII and COBRA, it is an action arising under the laws of the United States and is removable without regard to the citizenship or residence of the parties.

4.      Attached as Exhibit A to this notice, pursuant to 28 U.S.C. §1446(a), is a copy of all process pleadings and orders served on Defendants in this action pending in the Superior Court for the District of Columbia.

WHEREFORE, the Defendants request that the civil action known as *Anthony M. Ogbonnaya v. Riverside Hospital and George T. Hudgens,* Civil Action No. 2006 CA 008706 B, in the Superior Court for the District of Columbia, be removed to the United States District Court for the District of Columbia.

Respectfully submitted,

_____

Charles R. Bacharach
D.C. Bar No. 448842

Gordon, Feinblatt, Rothman,
    Hoffberger & Hollander, LLC
The Garrett Building
233 East Redwood Street
Baltimore, Maryland  21202
410/576-4169
FAX:  410/576-4292
cbacharach@gfrlaw.com
Attorneys for Defendants

497688.1
2/26/2007

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of February 2007, a copy of the foregoing Notice of Removal was filed electronically and mailed, first class, postage prepaid to Anthony Ogbonnaya, 622 Rittenhouse Street, N.W., Washington, D.C. 20011 and Norman T. Robinson, Esq., 405 16th Street, S.E., Washington, D.C. 20003.

_____
Charles R. Bacharach

3

P. 2

Superior Court of the District of Columbia
Civil Division

ANTHONY M. OGBONNAYA
622 Rittenhouse Street, NW.
Washington, D.C. 20011                          :
                                                :
            Plaintiff                           :
                                                :
v.                                              :
                                                :
RIVERSIDE HOSPITAL                              :       Civil Action No. 2006 CA 008760 B
4460 Macarthur Boulevard                        :       (Judge JUDITH E. RETCHIN)
Washington, D.C. 20007                          :
                                                :
GEORGE T. HUDGENS                               :
Administrator, in his official Capacity         :
4460 Mccarthur Boulevard                        :
Washington, D.C. 20007                          :

RECEIVED
Civil Clerk's Office
JAN 2 9 2007
Superior Court of the
District of Columbia
Washington, D.C.

            Defendants                          :
...................................................

## FIRST AMENDED COMPLAINT

### Introduction

Plaintiff, Anthony Ogbonnaya, pro se, brings this cause of action for monetary relief against Defendants for their misrepresentation of employment classification, discriminatory conduct based on race and national origin, unlawful discharge of employment and retaliatory conduct with regards to Plaintiff's opposition to Defendants' unethical and illegal mental health practices, unpaid vacation and other benefits, false imprisonment and intentional infliction of emotional distress.

### Jurisdiction

1.    Jurisdiction of this Court is founded on D.C. Code, Section 11-921 (2001) and Title VII of the Civil Rights Act of 1964.

**EXHIBIT A**

## Parties

2.    Plaintiff, Anthony Ogbonnaya, a resident of the District of Columbia was employed by the Defendant, Riverside Hospital, from September 29, 2003 to February 15, 2006. His employment is the subject of this lawsuit.

3.    Upon information and belief, Defendant Riverside Hospital (hereinafter called Hospital) is an incorporated business entity registered to conduct business in the District of Columbia.

4.    Upon information and belief, Defendant George T. Hudgens (hereafter called CEO) was the Administrator of the Hospital during Plaintiff's discharge.

## Background

5.    Prior to September 29, 2003, Plaintiff worked at the Defendant Hospital's facility as a temporary employee contracted by an outside Agency and assigned to work at the Hospital's facility. Plaintiff was at all times during the temporary assignments on the Agency's payroll.

6.    As a result of Plaintiff's hard work, reliability, dependability, habit of reporting to work on time and team spirit, the Hospital approached Plaintiff and started discussion about full permanent employment at the facility.

7.    On September 29, 2003, the Hospital offered Plaintiff full time employment as Social Worker in the Admissions/Intake Department. At all times during the initial employment process, Plaintiff was told by the Hospital that the employment classification was for that of an Admissions/Intake Social Worker. Defendant Hospital knew at the time of the representation that Plaintiff would be "pulled around" from one Department to another but did not disclose this to the Plaintiff.

8.   In reliance of Defendant's representation, Plaintiff accepted the employment as Admissions/Intake Social Worker.

9.   During the next six months after Plaintiff's employment, Hospital has moved Plaintiff from one Department to another without prior notice. Most of the time, Plaintiff was removed while attending to a patient and without any notice. Plaintiff believed that this was unethical and unprofessional, and not in the best interest of the patient.

10.  From the period of Plaintiff's temporary assignment to Hospital to the time of full employment, he observed one or two other Social Workers being removed from their Department to another but not as outrageously frequent as the Plaintiff.

11.  Plaintiff was removed from the Admissions/Intake Department and placed in the Acute or Residential Department at any time the Hospital wished, without prior notice.

12.  It came to a point that Plaintiff was not sure when he would be removed from one department to another in any given day. It was a 'take it or leave it' situation.

13.  Plaintiff was an excellent worker and did his work without complaining, however, the Hospital exploited his being different from others due to his national origin and "thick accent".

14.  When Plaintiff indicated his unwillingness to practice his profession in an unethical and unprofessional way, he was reprimanded and asked to do as he was told. Plaintiff became a target of gossip, yelling, insult and harassment from his superiors.

15.  On April 4, 2004, Dr. Sushman Jani, a Medical Director in Defendant Hospital facility, wanted Plaintiff to perform certain unethical discharge of a patient. Plaintiff honestly believed in his professional capacity that the discharge was not in the best interest of the patient. Plaintiff reminded Dr. Jani that the discharge would be against Standard Operating Procedures. In return, Dr. Jani started yelling abusive words at Plaintiff publicly and threatened to fire him if he refused to discharge the patient. This was not

the first time of such humiliating remarks from Dr. Jani. Plaintiff suffered emotional distress as a result of Dr. Jani's constant public verbal and emotional abuse. (Plaintiff's Memorandum of 4/6/2004 to Vanesta Poitier, Director of Social Worker, attached).

16.    Ms. Poiter referenced in paragraph 15 had witnessed most of these abusive and humiliating conduct towards Plaintiff on many occasions and had openly criticized the humiliation and discriminatory conducts towards Plaintiff.

17.    After numerous incidents of abuse and humiliation, Dr. Jani directed Ms. Poiter, then Plaintiff's Supervisor, to transfer Plaintiff from Admissions to Acute Department. According to Dr. Jani, Plaintiff had 'heavy accent' and would not effectively manage admissions.

18.    On numerous occasions, Plaintiff had complained to Hospital management officials about the discriminatory treatment he was receiving, but no investigations were made into Plaintiff's complaints.

19.    The Hospital had hard time keeping employees for a long time as total disregard of Standard Operating Procedures created a crisis ridden work environment. It is a situation where employees 'come and go' without speaking out. However, Plaintiff was not willing to disregard the ethical procedures and would not keep quiet about the unprofessional and unethical ways things were being done at the Hospital.

20.    Hospital was constantly engaging in unethical practices in the treatment of children left in their care. On several occasions, Hospital would require Plaintiff to admit patients with knowledge that there were inadequate numbers of Social Workers or Therapist on the work schedule to perform the duty of care to the patients. This left the patients unattended for days. Plaintiff was humiliated before other people, including Veena Rajipal whenever he objected to this kind of inhuman and unprofessional treatment of children.

21.   Hospital would also frequently order transfers of patients to their Residential Program without first seeking patients' parents or guardians' consent and, in total disregard of Court Orders for only drug programs. When Plaintiff objected to this, he was admonished for not following orders and thereafter retaliated against. This increased hostilities against Plaintiff from his superiors.

22.   Plaintiff believes that most actions taken against him were retaliatory in nature because of his opposition to Hospitals unethical and unprofessional practices.

24.   On many occasions, Plaintiff had complained of frequent and unscheduled assignment to different department, and especially had requested not to be assigned to work under Mr. Jusu. The Hospital denied his requests even when it was apparent that he was working in a hostile and humiliating environment and suffering emotional distress.

25.   The Hospital continued to transfer Plaintiff in violation of his initial employment classification and when it was apparent that he was suffering emotional distress, the Hospital decided to give him written orders for assignment to another department which gives him no options but to start "immediately.

26.   On February 7, 2006, Plaintiff was scheduled to attend a treatment plan meeting. However, Plaintiff's Supervisor, Kimoela Cato called and requested Plaintiff to drop everything he was doing and perform an urgent IEP for one of Plaintiff's patient. This patient's IEP was scheduled for the next day, 2/8/06, but Ms. Cato wanted it done right away. Ms. Cato instructed Plaintiff to also perform another IEP originally scheduled for 2/9/06. According to Plaintiff's honest belief and understanding, Ms Cato promised to take care of Plaintiff's other scheduled events, including the scheduled meeting. As Ms. Cato knew, it would be practically impossible for anybody to do two IEPs and still be able to attend the scheduled meeting, considering the time she approached Plaintiff. Ms. Cato did not show up at the Plaintiff's scheduled meeting while Plaintiff was

performing the IEPs. Ms. Cato thereafter initiated corrective action for Plaintiff's failure to attend the meeting.

27.   Few days prior to the event in paragraph 26, Ms. Cato told Plaintiff that she knew Plaintiff was from Nigeria and that she had heard from Mike Goodman (then Administrator) about Plaintiff's behavior. Ms. Cato went on to tell Plaintiff that she did not like Nigerians and made other disparaging remarks about Plaintiff and his national origin. Plaintiff complained to Charles Picard in Human Resources Department about Ms. Cato's remarks. Ms. Cato admitted some of her remarks to Mr. Picard when Plaintiff informed Ms. Cato that he preserved some of her remarks as evidence. Again, Mr. Picard did not take any actions.

28.   At this point, the Plaintiff could not cope with the discriminatory and hostile environment. He suffered a nervous and emotional break down. He became very sick, started having severe headache and dizziness. He looked for Ms. Cato to get permission to leave but she was not in her office. Plaintiff left a voicemail for Ms. Cato about his health condition. He saw the Human Resources Assistant and informed him of his condition. Being as sick as hell, the Plaintiff left the Hospital to return the next day.

29.   As a result of getting sick and leaving the Hospital, Plaintiff was suspended for leaving without Ms. Cato's permission.

30.   Plaintiff made honest efforts to explain the situation to George Hudgens, the Administrator, but was told that the suspension had been increased from one day to three days.

31.   After the three days' suspension, Plaintiff came back to work but was quickly led to the conference room by Charles Picard(Human Resources Director). He was confined in the conference room against his will and was forced to remain there. While confined in the conference room, some staff members went to his office and gathered his personal

items, and he was led out of the facility. This criminal-like and inhuman treatment created unbearable humiliation and emotional distress to Plaintiff.

32. On February 20, 2006, Mr. Hudgens wrote to Plaintiff informing him of his termination. The termination letter stated among other things that Plaintiff's last pay status was February 15, 2006.

33. Plaintiff was a great worker and had accrued vacation. His vacation time is over 200 hours and he has not received any payment or benefit accruing from his vacation.

34. The Hospital enjoyed Plaintiff's hard work and flexibility but was unable to deal with the fact that he was of a different national origin and a different race. The Hospital thought and believed that Plaintiff could be humiliated and demeaned without him complaining.

35. The Hospital is conducting mental health business without any operation manual and without regards to the best interest of the patients who were mostly minors. It has a "Keener Culture" of "do not say, do not ask". This was not acceptable to the Plaintiff and he voiced his dissent to this 'mafia' policy and culture.

### First Cause of Action

### DISCRIMINATION DUE TO RACE AND NATIONAL ORIGIN IN VIOLATION OF THE CIVIL RIGHTS ACT

36. Plaintiff adopts by reference the allegations contained in paragraphs 1 through 35 of this Complaint with the same effect as if fully set forth herein.

37. Defendants engaged in discriminatory practices by not acting on Plaintiff's complaints of name calling, remarks about his national origin, humiliation and use of abusive words in public.

7    Anthony Ogbonnaya Amended Pleading 1 –2006 CA 008760 B

38.   Defendants had knowledge that Plaintiff was being treated differently, 'pulled around' in a manner apparently different from others who held similar positions as Plaintiff.

39.   Defendants had knowledge that Plaintiff was assigned to do multiple tasks at the same time. Defendants knew that the multiple tasks would be absolutely impracticable for employees similarly situated to perform, giving the time frame and circumstances. However, Defendants penalized Plaintiff for not being able to perform the multiple functions, and refused to hear his complaints.

40.   Defendants' harassment, discrimination and humiliation were an ongoing conduct towards Plaintiff.

41.   Defendants treated Plaintiff differently as a result of his race and national origin, created a hostile and intimidating work environment in violation of the Civil Rights Act.

42.   Defendants failed and refused to investigate into Plaintiff's complaints and failed to take corrective actions to protect Plaintiff from discrimination under the circumstances.

43.   As a result of Defendants' unlawful conduct towards Plaintiff, Plaintiff suffered and will continue to suffer extreme emotional stress and mental anguish.

**WHEREFORE**, Plaintiff respectfully prays this Honorable Court to enter judgment:

i)   against Defendants, for compensatory damages in the sum of $500,000.00 and punitive damages in the sum of $600,000.00.

a.   for treble damages and reasonable attorney's fees, with prejudgment and post-judgment interest and costs, and such other relief as this Court deems just and proper.

8        Anthony Ogbonnaya Amended Pleading 1 –2006 CA 008760 B

## Second Cause of Action:

## INTENTIONAL MISREPRESENTAION AND DECEIT

44.     Plaintiff adopts by reference the allegations contained in paragraphs 1 through 43 of this Complaint with the same effect as if fully set forth herein.

45.     Plaintiff was offered employment by Hospital as an Admissions/Intake Social Worker and in reliance of this employment classification, Plaintiff accepted the employment.

46.     At all times and place of the employment offer, Hospital knew that Plaintiff would be assigned to different Department of the facility but failed to disclose this intention to the Plaintiff.

47.     After few months of employment, Hospital started assigning Plaintiff to different Departments of the facility without prior notice to Plaintiff of the change in his employment classification. Hospital had each time demanded Plaintiff to abandon his scheduled job and patients only to be assigned to a different department.

48.     Defendant showed no respect to Plaintiff's complaints and disregarded the initial employment classification of Plaintiff.

49.     Hospital made this false representation that Plaintiff was employed as Admissions/Intake Social Worker with knowledge of its falsity or made them with such reckless indifference to the truth that it would be reasonable to charge Hospital with knowledge of the falsity.

50.     Hospital intended that Plaintiff would rely on such representations and Plaintiff in fact relied on them to his detriment.

51.     As a result of Hospital's misrepresentations and deceit, Plaintiff sustained severe humiliation, abuse, insult and ridicule. Plaintiff suffered and will continue to suffer extreme emotional stress and mental anguish.

WHEREFORE, Plaintiff respectfully prays this Honorable Court to enter judgment against Defendants, for compensatory damages in the sum of $500,000.00 and punitive damages in the sum of $600,000.00 together with prejudgment and post-judgment interest and costs.

### Third Cause of Action

### UNLAWFUL EMPLOYMENT TERMINATION

52.    Plaintiff adopts by reference the allegations contained in paragraphs 1 through 51 of this Complaint with the same effect as if fully set forth herein.

53.    Plaintiff was employed by Defendants under an intentional misrepresentation and assigned to perform functions in different departments of the facility of the Hospital.

54.    Plaintiff was also demanded to perform his duties in total disregard of industry standards and in violation of the legally protected rights of the patients.

55.    When Plaintiff continued to complain about the lack of professional standard of care for patients and continuous disregard of his complaints of discrimination, Defendants retaliated against Plaintiff with 'Corrective Actions' and subsequently fired him in violation of Section 1-2525(a)-(c) of D.C. Code 1981

56.    As a result of Defendants' actions, Plaintiff suffered financial loss, loss of income and support for his family, loss of earned benefits including vacation benefits, and damages. In addition, Plaintiff suffered and will continue to suffer extreme emotional stress and mental anguish.

WHEREFORE, Plaintiff respectfully prays this Honorable Court to enter judgment against Defendants for compensatory damages in the sum of $500,000.00 and punitive damages in the sum of $600,000.00 together with prejudgment and post-judgment interest and costs.

10    Anthony Ogbonnaya Amended Pleading 1 –2006-CA 008760 B

## Fourth Cause of Action

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND MENTAL ANGUISH

57.   Plaintiff adopts by reference the allegations contained in paragraphs 1 through 56 of this Complaint with the same effect as if fully set forth herein.

58.   Defendants' continuous discriminatory practices towards Plaintiff started to have a toll on him. Plaintiff was constantly in fear of being yelled at or being called 'stinky Nigerian', humiliated and insulted in public.

59.   As a result of the intimidation and hostile work environment, Plaintiff suffered severe emotional distress and mental anguish.

60.   Plaintiff had in many occasions complained to the Defendants of the effect the discriminatory and hostile work environment was having on him but the Defendants disregarded his complaints for the apparent reason that he was different, of Nigerian origin.

61.   Defendants had knowledge of Plaintiff's emotional distress by virtue of his numerous complaints, and more so through his memo of February 14, 2005 to George Hudgens. In that memo, Plaintiff complained of harassments and discrimination which had "inflicted emotional pain, mental anguish and suffering" caused "by the pattern of abuses and discrimination practices" against him. Plaintiff went further to complain that the infliction of emotional distress was affecting his job performance and "ability to do my job and meet the needs of my patients". "I am now reduced to looking over my shoulder on a daily basis and wondering what next against me". "..this hostile work environment emotionally affect the therapist and indeed the patients..". These acts of discrimination and humiliation violates the Civil Rights Act and the D.C. Human

Rights Act, and caused Plaintiff emotional harm, loss of sleep and depression, and insecurity.

62. Defendants intentionally condoned the hostile work environment against Plaintiff and thereby intentionally inflicted emotional distress and mental anguish against Plaintiff.

63. As a result of Defendants' actions, Plaintiff suffered loss of concentration, loss of confidence in himself and damages. In addition, Plaintiff suffered and will continue to suffer extreme emotional stress and mental anguish.

**WHEREFORE**, Plaintiff respectfully prays this Honorable Court to enter judgment against Defendants for compensatory damages in the sum of $500,000.00 and punitive damages in the sum of $600,000.00 together with prejudgment and post-judgment interest and costs.

## Fifth Cause of Action

### FALSE IMPRISONMENT

64. Plaintiff adopts by reference the allegations contained in paragraphs 1 through 63 of this Complaint with the same effect as if fully set forth herein.

65. Plaintiff complained to Defendants about the discriminatory treatment he was receiving from Defendants and their agents.

66. Defendants failed to investigate the complaints indicating their approval of discriminatory practices.

67. As part of Defendants' discriminatory practices towards Plaintiff, Plaintiff was suspended for three days.

12    Anthony Ogbonnaya Amended Pleading 1 –2006 CA 008760 B

68.    At the end of the suspension period, Plaintiff reported for work but was immediately led by Charles Picard(Human Resources Director) to the conference room against Plaintiff's will.

69.    Plaintiff was confined in the conference room against his will, with closed door and asked not to move.

70.    Defendants caused other staff members to go through Plaintiff's personal items in Plaintiff's office and had such items removed without prior explanation of the situation to Plaintiff.

71.    Plaintiff was then escorted out of the facility, and was paraded like a criminal while other members of staff looked on.

72.    During the period of Plaintiff's employment, Plaintiff was in good standing as indicated by a letter of recommendation by Charles Picard, Human Resources Director, and dated May 25, 2005. At no time was Plaintiff known as a person of questionable character in the facility nor did Plaintiff ever receive an unsatisfactory appraisal of his performance.

73.    Dr. Bhatia, Plaintiff's overall Supervisor and her sister Ms. Aarti, the Chief Financial Officer and one of the owners of the facility, had on numerous occasions, complimented Plaintiff as a hard, reliable worker before other staff members.

74.    Defendants' detention and confinement of Plaintiff in the conference room against his will created fear and emotional distress in the Plaintiff, and thereby constituted false imprisonment.

75.    As a result of Defendants' actions, Plaintiff suffered fear, palpitation, apprehension, humiliation and damages. It was a feeling of a lamb in the midst of wolves. In addition, Plaintiff suffered and will continue to suffer extreme emotional stress and mental anguish.

WHEREFORE, Plaintiff respectfully prays this Honorable Court to enter judgment against Defendants for compensatory damages in the sum of $500,000.00 and punitive damages in the sum of $600,000.00 together with prejudgment and post-judgment interest and costs.

## Sixth Cause of Action

### UNPAID BENEFITS

76.  Plaintiff adopts by reference the allegations contained in paragraphs 1 through 75 of this Complaint with the same effect as if fully set forth herein.

77.  During the period of Plaintiff's employment, Plaintiff was in good standing as indicated by a letter of recommendation by Charles Picard, Human Resources Director, and dated May 25, 2005. At no time was Plaintiff sanctioned for absenteeism or known to have exhausted his vacation hours.

78.  Plaintiff had earned vacation hours of up to 200 or more hours. Plaintiff earned those hours and has not yet received any payment from Defendant in violation of COBRA. Plaintiff deserves to be compensated financially.

79.  Plaintiff is also entitled to other employment benefit that Defendants had withheld from paying him.

80.  CEO stated in his letter of termination of Plaintiff's employment that Plaintiff will receive information regarding his benefits, including rights to continue benefits under COBRA. However, Plaintiff is yet to receive that information and benefit from Defendants.

P-16

81.  As a result of Defendants' actions, Plaintiff suffered loss of earned income and benefit. In addition, Plaintiff suffered and will continue to suffer extreme emotional stress and mental anguish.

   **WHEREFORE**, Plaintiff respectfully prays this Honorable Court to enter judgment against Defendants, for compensatory damages in the sum equal to the earned vacation hours and other benefits. Plaintiff also prays for punitive damages in the sum of $600,000.00 together with prejudgment and post-judgment interest and costs.

**JURY TRIAL**

Plaintiff hereby requests for jury trial.

Respectfully submitted,

Anthony Ogbonnaya (Pro se)
622 Rittenhouse Strreet, N.W.
Washington, DC 20011
Tel: 202-291-2160

01/30/2007 TUE 13:33  [TX/RX NO 7453]

## DISMISSAL AND NOTICE OF RIGHTS

To: Anthony M. Ogbonnaya
622 Rittenhouse Street
Washington, DC 20011

From: Jackson Area Office - 423
100 West Capitol Street
Suite 207
Jackson, MS 39269

[ ] On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR § 1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 570-2006-00571 | Bobbie J. Wilson, Investigator | (601) 948-8434 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

[ ] Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ] While reasonable efforts were made to locate you, we were not able to do so.

[ ] You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this Notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Wilma Scott,
Area Office Director

9/7/06
(Date Mailed)

Enclosure(s)

cc: N. Craig Cutter
Corporate Director, Human Resources
RIVERSIDE HOSPITAL
4460 MacArthur Boulevard
Washington, DC 20007

Charles R. Bacharach, Esq.
Gordon Feinblatt Rothman Hoffberger & Hollander, LLC
233 East Redwood Street
Baltimore, MD 21202-3332

P. 2

## Superior Court of the District of Columbia

### CIVIL DIVISION

#### PRAECIPE

FILED
CIVIL ACTIONS BRANCH
JAN 29 2007
Superior Court
of the District of Columbia
Washington, D.C.

☒ CIVIL ACTION JM-170
☐ LANDLORD AND TENANT JM-255
☐ SMALL CLAIMS JM

The _29th_ Day of _January_, 2007

Anthony Ogbonnaya
_Plaintiff_                          vs.

Riverside Hospital
_Defendant_

_06 CA 8760_
Case Number

The Clerk of said Court will _withdraw my appearance from this matter, I no longer represent Anthony Ogbonnaya._

| Attorney for Defendant | | Attorney for Plaintiff Norman T. Robinson |
|---|---|---|
| Address | | Address 405 16th St. SE |
| | | Washington, DC |
| Phone No. | Bar No. | Phone No. 202-554-3563 | Bar No. 461769 |

Form CV-358/Jul. 00

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

Anthony M. Ogbonnaya
622 Rittenhouse Street, N.W.
Washington, D.C. 20011

             Plaintiff,

               v.

RIVERSIDE HOSPITAL
4460 MACARTHUR BOULEVARD
WASHINGTON, D.C. 20007

George T. Hudgens, Chief Executive Officer
in his official and individual capacities
4460 MACARTHUR BOULEVARD
WASHINGTON, D.C. 20007

             Defendants,

Civil Action No. :
Judge
Calendar

RECEIVED
Civil Clerk's Office
DEC 0 7 2006
Superior Court of the
District of Columbia
Washington, D.C.

Serve:

George T. Hudgens, Chief Executive Officer
in his official and individual capacities

---

## COMPLAINT

COMES NOW Plaintiff, Anthony Ogbonnaya, "Ogbonnaya" ), by and through undersigned

counsel, and files this complaint for damages against Riverside Hospital ( hereinafter referred to

as "the hospital" or the " Company" ).  Anthony Ogbonnaya seeks redress for injuries arising

from wrongful termination due to discrimination based on race and national origin, retaliation

under the District of Columbia Human Rights Act, Intentional Infliction of Emotional Distress,

False Imprisonment.  In support of his claims, Plaintiff alleges the following:

1

## JURISDICTION

1. This Court has original subject jurisdiction over this case by virtue of 1-2556(a)1-2512 (1981)-, 1-2512(a)(1), (1981), 11-921(a), 1-2512(a)(1) and Title VII of the Civil Rights Act of 1964

2. Venue of this Court is proper because the acts complained of occurred in the District of Columbia.

## PARTIES

3. Plaintiff, Antony Ogbonnaya, was at all times relevant herein, a resident of the District of Columbia. and was employed as Social Worker for Riverside Hospital for 2 years and 11 months prior to his discharge on February 20, 2006..

4. Riverside Hospital is located at 4460 MacArthur Boulevard, N.W., Washington, D.C. 20036 is a company that specializes in providing mental health services.

5. Defendant, George T. Hudgens was administrator or chief executive officer Riverside Hospital at the time of Anthony Ogbonnaya's discharge.

6. Kimoela Cato was the supervisor of social workers of Riverside Hospital at the time of Anthony Ogbonnaya's discharge.

7. Charles Picard was Human Resources Director of Riverside Hospital at the time of Anthony Ogbonnaya's discharge.

8. Mike Goodman was Administrator prior to George T. Hudgens. Anthony Ogbonnaya had complained to George T. Hudgens about the treatment of children at Riverside Hospital that violated the law and endangered the health of many of it's residents.

2

# STATEMENT OF FACTS

1.  On February20, 2006, Anthony Ogbonnaya was terminated from his employment as social worker of 2 (two) years and 11 (eleven) months at Riverside Hospital.

2.  During his employment Anthony Ogbonnayar rendered outstanding service for the children and the company while his record was free of any major discipline.

3.  Anthony Ogbonnaya was a social worker providing services to children in the residential treatment program.

4.  Anthony Ogbonnaya's duties included performing task assigned by the supervisor, Kimoela Cato.

5.  As early as April 2004 Ogbonnaya had complained to Vanesta Poiter, Director of Social Workers regarding the humiliating treatment that he was receiving at Riverside.  On several occasions Ogbonnaya was yelled at and ordered to shut up by Dr. Jani for following the standard operating procedures.  Vanesta Poiter would respond to Ogbonnaya's complaints regarding his treatment and that of the children in his care by threatening him with termination.

6.  Many of their tongue lashing were public and without regard for how belittling or humiliating.

7.  In 2005, at Riverside Anthony Ogbonnaya was subjected to derogatory remarks from Mike Goodman regarding his national origin.

8.  Anthony Ogbonnaya asserts he was given two disciplinary actions in February 2006 that were in direct retaliation for his complaints to Human Resources regarding his treatment and the treatment of children in his care.

3

9. Ogbonnaya asserts he was told by his supervisor that Kimoela Cato that she did not like Nigerians. Some thereafter he complained to Human Resources, but no action was taken.

10. Anthony Ogbonnaya complained to the Riverside Management regarding their issuance of disciplinary actions toward him without regard for the District of Columbia Human Rights Act ( DCHRA ). The Company took adverse personal actions resulting in wrongful termination.

11. A causal connection exists between Anthony Ogbonnaya's opposition to Riverside's unlawful behavior and violations of DCHRA and his harassment and termination.

12. Anthony Taylor gave all staff members and residents the same treatment regardless of race, sex, sexual origination, age or creed.. As result of Anthony Ogbonnaya's refusal to engage in treatment that he thought to be discriminatory, not in the best interest of the children in his care and violations of DCHRA. He was terminated in violation of D.C. Code. Anthony Taylor states that the aforesaid termination was in retaliation for his opposing the "Keener Culture". The Keener Culture" consisted of repeated and unlawful practices made unlawful by (DCHRA)

13. On February 20, 2006 to day of Ogbonnaya's termination George T. Hudgens locked Ogbonnaya in a conference room against his will he or the staff gathered Ogbonnaya's personal items. This action appeared to Ogbonnaya to be for no reason other than to ensure the maximum infliction of emotional distress. This

4

day should be the last date of outrageous conduct that is actionable by this claim for damages.

## COUNT I

### Discrimination Due To Race And National Origin

14.    Anthony Ogbonnaya states that he received constant harassment, retaliation, and termination resulting from his race and national origin in the form of verbal insults for the purpose of creating an intimidating, hostile, and offensive working environment.

15.    Anthony Ogbonnaya states that he suffered continued and repeated offensive verbal kidding, teasing, and insults of a discriminatory nature which were demeaning and degrading.

16.    Anthony Ogbonnaya states that this behavior was not welcome, personally intimidating, hostile, or offensive.

17.    The alleged harassment, discrimination and retaliation was an ongoing behavior with the last incident occurring within the one year time limitation period for this claim. Therefore this claim is not barred under the District of Columbia Human Rights Act even though initial occurrence of alleged discrimination and retaliation occurred more than two years prior to the filing of this claim.

18.    Plaintiff incorporates by reference paragraphs 1 thorough 18 as if fully set forth herein.

**WHEREFORE**, plaintiff respectfully prays that this Honorable Court enters:

(a)    Judgment against Defendants, jointly and severally, for compensatory damages

5

(discrimination due to race and national origin back pay, attorney's fees and damages in excess of Two Hundred Thousand and Fifty Dollars ($250,000).

(b)    Judgment against individual Defendants for punitive damages in an excess of Two Hundred Thousand and Fifty Dollars ($250,000) for Defendants' actions towards Plaintiff and to deter similar conduct in the future; and

(c)    Reasonable attorney fees, interest, costs and such relief as this Court deems just and proper.

## COUNT II

## Wrongful Discharge Due To Retaliation under District of Columbia Human Rights Act (DCHRA)

31.    Pursuant to D.C. Code 1981, 1-2525 which prohibits employer to retaliate against a person on account of that person's opposition to any practice made unlawful by DCHRA. practices in hiring, firing, compensation.

32.    Plaintiff incorporates by reference paragraphs 1 thorough 18 as if fully set forth herein.

As a result of the wrongful acts of the Defendants;

**WHEREFORE,** plaintiff respectfully prays that this Honorable Court enters:

(a)    Judgment against Defendants, jointly and severally, for compensatory damages back pay, attorney's fees and damages in excess of Two Hundred Thousand and Fifty Dollars ($250,000).

(b)    Judgment against individual Defendants for punitive damages in an excess of Two

6

Hundred Thousand and Fifty Dollars ($500,000) for Defendants' actions towards

Plaintiff and to deter similar conduct in the future; and

(c)      Reasonable attorney fees, interest, costs and such relief as this Court deems just

and proper.

**COUNT III**

**Retaliation For Lawful EffortsTo Prevent**

**Persons From Complying with District of Columbia Human Rights Act**

**1-2525(a)-(c)**

33.      Plaintiff incorporates by reference paragraphs 1 thorough 33 as if fully set forth

herein.

**WHEREFORE**, plaintiff respectfully prays that this Honorable Court enters:

(a)      Judgment against Defendants, jointly and severally, for compensatory damages

back pay, attorney's fees and damages in excess of Two Hundred Thousand and

Fifty Dollars ($250,000).

(b)      Judgment against individual Defendants for punitive damages in an excess of Two

Hundred Thousand and Fifty Dollars ($250,000) for Defendants' actions towards

Plaintiff and to deter similar conduct in the future; and

(c)      Reasonable attorney fees, interest, costs and such relief as this Court deems just

and proper.

7

## COUNT IV

### Aiding and Abetting Acts Prohibited by

### District of Columbia Human Rights Act

34.  Anthony Ogbonnaya states that he on more than more occasion met with and complained to Human Resources and the administrator about the incidents of illegal discrimination, retaliation, harassment at Riverside Hospital.

35. Anthony Ogbonnaya states he reported these actions were done with the purpose of creating an intimidating, hostile, and offensive working environment of him and some of the other staff.  He states he reported these actions created an intimidating, hostile, and offensive working environment of him and some of the other staff.

36. Anthony Ogbonnaya states that he suffered continued and repeated offensive verbal kidding, teasing, and jokes of a racial nature which were demeaning and degrading.

37. Anthony Ogbonnaya states that this behavior was not welcome, personally, intimidating, hostile, or offensive.

Plaintiff incorporates by reference paragraphs 1 thorough 37 as if fully set forth herein.

As a result of the wrongful acts of the Defendants;

**WHEREFORE**, plaintiff respectfully prays that this Honorable Court enters:

(a)    Judgment against Defendants, jointly and severally, for compensatory damages back pay, attorney's fees and damages in excess of Two Hundred Thousand and Fifty Dollars ($250,000) .

(b)    Judgment against individual Defendants for punitive damages in an excess of Two Hundred Thousand and Fifty Dollars ($250,000) for Defendants' actions towards

8

Plaintiff and to deter similar conduct in the future; and

(c)    Reasonable attorney fees, interest, costs and such relief as this Court deems just and proper.

## COUNT V

### Intentional Infliction of Emotional Distress

38.    Defendants, acting intentionally or recklessly caused Anthony Taylor mental distress. The defendant's actions were both extreme and outrageous and without any legitimate business justification. The defendants willfully and maliciously conspired to cause plaintiff to be belittled, humiliated, and discharged without just cause and confined in a room, thereby inflicting sever emotional distress.

39.    Anthony Ogbonnaya states he has suffered loose of sleep, chest plains, and head aches. As a proximate result of his continued and repeated opposition to discriminatory sexual, racial, and national acts of harassment and discrimination leading to the wrongful termination plaintiff has suffered loss of income and loss of fringe benefits.

40.    Plaintiff states he has suffered emotional distress and mental anxiety. These constant belittling incidents negatively affected his work performance and left him emotionally wrecked with feelings of inadequacy, lost sleep, and depression.

Plaintiff incorporates by reference paragraphs 1 thorough 48 as if fully set forth herein. As a result of the wrongful acts of the Defendants;

**WHEREFORE**, plaintiff respectfully prays that this Honorable Court enters:

(a)    Judgment against Defendants, jointly and severally, for compensatory damages back pay, attorney's fees and damages in excess of Two Hundred Thousand and

9

Fifty Dollars ($250,000) .

(b)    Judgment against individual Defendants for punitive damages in an excess of Two

Hundred Thousand and Fifty Dollars ($250,000) for Defendants' actions towards

Plaintiff and to deter similar conduct in the future; and

(c)    Reasonable attorney fees, interest, costs and such relief as this Court deems proper

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues.

Respectfully submitted,

By: _____

Norman T. Robinson #461769
ROBINSON LAW OFFICES
405 16th Street, S.E.
Washington, D.C. 20003
(202) 554-3553 phone
(202) 554-1374 facsimile

10

P. 3



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

ANTHONY M. OGBONNAYA
  Vs.
RIVERSIDE HOSPITAL

C.A. No.    2006 CA 008760 B

## **INITIAL ORDER**

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order, and any General Order issued **by the judge** to whom the case is assigned. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(o).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to: Judge JUDITH E RETCHIN
Date:  December 7, 2006
Initial Conference: 9:30 am, Friday, March 16, 2007
Location:  Courtroom 220
        500 Indiana Avenue N.W.
        WASHINGTON, DC 20001

Caio.doc

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Anthony M. Ogbonnaya | Riverside Treatment Services, Inc. (incorrectly named as Riverside Hospital) and George T. Hudgens |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF **DC** (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____ (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
|---|---|

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Norman T. Robinson, Esq. DC Bar #461769 405 16th Street, S.E. Washington DC 20003 202-554-3553 (Phone) | Charles R. Bacharach, Esq. - Gordon Feinblatt, et al DC Bar #448842 233 East Redwood Street Baltimore MD 21202 410-576-4169 (Phone) cbacharach@gfrlaw.com |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

○ **A.** *Antitrust*

- ☐ 410 Antitrust

○ **B.** *Personal Injury/ Malpractice*

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

○ **C.** *Administrative Agency Review*

- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D.** *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E.** *General Civil (Other)* **OR** ○ **F.** *Pro Se General Civil*

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☒ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

## V. ORIGIN

○ 1 Original Proceeding   ◉ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Title VII of the Civil Rights Act of 1964 and COBRA.  Suit alleging discrimination, failure to pay benefits and related torts.

| VII. REQUESTED IN COMPLAINT | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ $500,000 | Check YES only if demanded in complaint |
|---|---|---|---|
| | | JURY DEMAND: | YES ☒  NO ☐ |

| VIII. RELATED CASE(S) IF ANY | (See instruction) | YES ☐  NO ☒ | If yes, please complete related case form. |
|---|---|---|---|

DATE  2/27/2007    SIGNATURE OF ATTORNEY OF RECORD

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.     CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint.  You may select only one category.  You must also select one corresponding nature of suit found under the category of case.

VI.     CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.